**Ezra Taft BENSON, Secretary of Agriculture of the United States, et al.,**
**Plaintiffs,**

**v.**

**UNITED STATES of America et al.,**
**Defendants.**

**Civ. A. No. 828–58.**

United States District Court
District of Columbia.
June 5, 1959.

James K. Knudson and Walter D. Matson, Washington, D. C., for plaintiff.

Charles W. Bucy, Asst. Gen. Counsel, Lester R. Conley and Joseph E. Quin, Office of the General Counsel, Department of Agriculture, Washington, D. C., for the Secretary of Agriculture.

Victor R. Hansen, Asst. Atty. Gen., James E. Kilday and Colin A. Smith, Dept. of Justice, Washington, D. C., for the Commodity Credit Corp.

Robert Ginnane and C. H. Johns, Jr., Interstate Commerce Commission, Washington, D. C., for the Interstate Commerce Commission.

Edward M. Reidy, Washington, D. C., Charles W. Burkett, Jr., and Frederick G. Pfrommer, San Francisco, Cal., for the intervening railroad.

Donald B. MacGuineas and Arthur H. Fribourg, Dept. of Justice, Oliver Gasch, U. S. Atty., Edward P. Troxell, Principal Asst. U. S. Atty., John F. Doyle and Harold D. Rhynedance, Jr., Asst. U. S. Attys., Washington, D. C., for the United States.

SIRICA, District Judge.

This is an action brought by the Secretary of Agriculture, the Commodity Credit Corporation and twenty-six commercial shippers of cotton in the southwestern United States to obtain review of the action of the Interstate Commerce Commission in denying plaintiffs' petition for reparations from certain rail companies based on alleged overcharges and unreasonable rates on the shipment of plaintiffs' cotton.

The controversy centers on the railroads' method of applying the 9% and 15% general increases in freight rates allowed by the Commission in Ex parte 168 and 175, respectively, in order to enable the railroads to meet rising costs of operation in the period since World War II. For many years, it had been customary for the rail companies to quote a so-called "c. i. t." or "compressed in transit" rate on the shipment of cotton by carload in bales. By compressing the flat cotton to about 22.5 pounds per cubic foot, a much greater quantity can be carried in each car. Apparently as a competitive means of encouraging cotton shippers to transport their goods by rail, the railroads quoted a "c. i. t." rate and agreed to absorb all or part of the cost of the off-loading of flat cotton, of the compression and of the re-loading, not to exceed $.25 per one-hundred pounds. When the total cost of compression exceeds $.25 per one-hundred pounds, as it has in recent years, the shipper may pay the compress company directly or have the railroads advance the sum and pay it to them at the settlement of freight charges.

When the above percentage increases in freight rates were granted the railroads, the percentage was applied to the c. i. t. rate as published in the applicable tariffs. It is plaintiffs' contention, however, that neither the language of the tariffs nor applicable law permit the use of the c. i. t. rate as the base for applying the percentage increases because the c. i. t. rate includes a factor not directly connected with rail transportation; i. e., the so-called "compression allowance". According to plaintiffs, the proper method would have been to subtract the compression allowance from the gross c. i. t. rate first to determine the "net" rate and then apply the percentage increase to this amount.

It is contended by plaintiffs that the very language of the rail tariffs relating to the general increases requires this result. The essential part of this language is as follows:

"In applying the provisions of this tariff, first determine the rate or charge which would apply except for this tariff and then increase the rate or charge so determined as provided in this tariff."

Plaintiffs argue that the "rate" must be interpreted as the "net rate" and not, as the railroads have interpreted it, as the gross c. i. t. charge. The use of the gross rate as a basis for computation naturally results in a higher rate for the shippers. It was plaintiffs' position before the Commission and now before the Court that the railroads' action brought about an "inapplicable" rate and thus violated Section 6(7) of the Commerce Act (49 U.S.C.A. § 6(7)).

Plaintiffs next contend that, assuming the rate increases to have been correctly applied within the terms of the tariff, such a method is nonetheless an unjust and unreasonable practice, and it also produces an unjust and unreasonable rate in violation of Section 1 of the Act (49 U.S.C.A. § 1(4), (5) and (6)). In their view, the railroads pursued a regular course of charging rates higher than those provided for in the tariff and not authorized by law and thus followed an "unjust and unreasonable practice". The rate itself is also argued to have been "unjust and unreasonable" because it included a non-transportation factor (the compression allowance) which lies outside the scope of the Commission's regulatory power and because the total increase in purely transportation revenue exceeded percentage-wise the authorized 9% and 15% increases.

All of these contentions were rejected by the Commission after extensive hearings. In essence, the Commission ruled that the c. i. t. rate is a unitary, indivisible freight rate to which it was lawful to apply the horizontal increases. As was explained in its ruling at 289 I.C.C. 71, at p. 77:

> "The c. i. t. rate is a specifically published freight rate to which the findings in the ex parte proceedings contemplated that the authorized increases would be applied. The compression allowance is not a 'charge' made by the defendants, but a deduction made for the shipper's convenience * * * An allowance. which the defendants agree to apply toward the cost of compression in

transit, due to the form or condition of the commodity when offered for transportation, cannot properly be termed a charge exacted by them. * * * "

In its second ruling at 289 I.C.C. 584, the Commission also stated as follows:

> "We beleve (sic) that the defendants' method of applying the general increases was proper and produced the legal rates. Such an application was uniformly made as to all shippers and was in conformity with the tariffs. Additionally, even if the method of applying the general increases were found unreasonable as alleged, we could not for that reason alone require the payment of damage. It would be necessary for us to find also that the total charges collected were unjust and unreasonable. See F. W. Bolgiano & Co., Inc., v. Baltimore & O. R. Co., 291 I.C.C. 659, and Acme Peat Products v. Akron, C. & Y. R. Co., 293 I.C.C. 510."

And again on page 585 it said:

> " * * * Fourth-section violations would thus result. The method of applying the general increases sought to be used, could produce an unlawful result. The method used by the defendants is the only one practicable and does not constitute an unreasonable practice." See Great Northern Ry. Co. v. Delmar Co., 283 U.S. 686 [51 S.Ct. 579, 75 L.Ed. 1349].

In this proceeding, the court is precluded from trying this controversy *de novo* by section 9 of the Commerce Act (49 U.S.C.A. § 9), since the parties chose to initiate their petition for reparations in the Commission rather than in a District Court. United States v. Interstate Commerce Commission, 1949, 337 U.S. 426, 432–440, 69 S.Ct. 1410, 93 L.Ed. 1451. The standards to be used here, therefore, are those generally used by courts when reviewing agency action. United States v. Interstate Commerce Commission, 1952, 91 U.S.App.

D.C. 178, 198 F.2d 958, 964. As the Supreme Court stated in Interstate Commerce Commission v. Union Pacific R. Co., 1912, 222 U.S. 541, 547, 32 S.Ct. 108, 111, 56 L.Ed. 308:

> "In determining these mixed questions of law and fact, the court confines itself to the ultimate question as to whether the Commission acted within its power. It will not consider the expediency or wisdom of the order, or whether, on like testimony, it would have made a similar ruling."

On questions of law, also, the courts should give considerable weight to the Commission's rulings and uphold them where it finds a reasonable basis for its conclusions. Gray v. Powell, 1941, 314 U.S. 402, 62 S.Ct. 336, 86 L.Ed. 301. In this case, both sides have conceded in open court during oral argument that no genuine issue of material fact exists and thus it will be considered as one appropriate for summary judgment.

■ In the Court's view, it cannot be said that the Commission's action lacked a rational basis, nor has plaintiff shown that its findings were not based on substantial evidence. The compression allowance is not a fixed and separable element of the c. i. t. rate as plaintiffs maintain. It is merely accidental that the railroads have been held to the maximum of $.25 per hundred over recent years. The original concept was that the c. i. t. rate would remain the same even though the actual compression cost might vary in amount up to $.25. Thus, the c. i. t. rate was properly regarded as an indivisible rate for transportation involving an ancillary convenience or service to the shipper. It is not unreasonable to have held, as did the Commission, that the c. i. t. rate was the "rate" to which the general increases should have been applied.

The position of the defendant, United States of America, is that it is a nominal defendant but that it supports the position taken by the plaintiffs. Therefore, the motion for summary judgment on behalf of the defendant, Interstate Commerce Commission, and the intervening defendants, the railroads, is granted, and the motion of the plaintiffs for summary judgment is denied.

Counsel will present an appropriate order